## ORPHANS' COURT OF BALTIMORE CITY

Filed February 8, 1900.

### GEORGE BENTZ
### VS.
### GEORGE S. COLTON, ADMINISTRATOR OF JOHN G. EISMAN.

*W. Burns Trundle* for petitioner.
*James Fluegel* for respondent.

GRIFFITH, J.—

The petition in this case was filed by George Bentz, a judgment creditor of George S. Colton, administrator of Anna C. Eisman, deceased.

The petition, answer and exhibits present the following undisputed facts: The Metropolitan Life Insurance Company, on November 19, 1888, issued a policy of insurance on the life of Anna C. Eisman, in which her husband, John G. Eisman, was named as the beneficiary. On April 4th, 1893, John G. Eisman died, intestate, and left surviving him his widow, Anna C. Eisman, and four minor children. The policy was continued in force, without change of beneficiary, by Anna C. Eisman, by the payment of the premiums or assessments thereon down to the time of her death, which occurred on the 11th day of July, 1897. She died intestate and without having made any disposition of her interest, if any she had, in the policy during her lifetime.

Letters of administration were granted by this Court on November 12, 1897, to George S. Colton, as administrator of the estate of Anna C. Eisman, and as such the insurance company paid to him the amount due under the policy. On July 3, 1898, the petitioner having had charge of the funeral arrangements attending the burial of Anna C. Eisman, and his bill thereof remaining unpaid, brought suit against George S. Colton, administrator of Anna C. Eisman, before one of the civil magistrates of this city and obtained judgment for the amount of his claim. An appeal was then taken to the Baltimore City Court.

Before the appeal was heard, George S. Colton, on March 3, 1899, asked for and was granted letters of administration on the estate of John G. Eisman, the beneficiary named in the policy, and three days afterwards passed his account in said estate, whereby he distributed the proceeds of the insurance policy, after payment of administration charges and commissions, to himself as guardian of the four minor children of John G. Eisman. The City Court, on April 17th, 1899, rendered a judgment in favor of the petitioner against George S. Colton, administrator of Anna C. Eisman, "to be levied out of funds of the estate that may hereafter come into the hands of the administrator." Afterwards the petitioner brought suit and recovered a judgment against George S. Colton, administrator of John G. Eisman, but this judgment, on appeal, was reversed by the City Court.

The petitioner now comes into this Court and charges that the administration account, passed by George S. Colton as administrator of John G. Eisman's estate, is erroneous and improper, in that one-third of the proceeds of insurance, after payment of costs and commissions, should have been distributed to said George S. Colton, administrator of Anna C. Eisman, and the other two-thirds to the four minor children of John G. Eisman. The respondent, on the other hand, contends that the account as stated and passed is correct; that personal property vests in the distributee only when distribution is made, and that Anna C. Eisman could not take an interest or estate in the policy, as distributee, because it was not due until after her death, and that she could not take as distributee the avails of her own death and transfer the same to her personal representatives.

There is no controversy in this proceeding as to the *title* to the policy. It is conceded that the proceeds thereof are at this time rightfully in the hands of the administrator of the estate of John G. Eisman, though in the first place the money due under the policy was erroneously turned over to the administrator of Anna C. Eisman's estate. The question then for this Court to determine is how the fund arising from the insurance policy should be *distributed*.

In reaching a decision of the question involved it is, in the first instance, necessary to inquire into the legal character of the insurance policy, and also the nature of the interest the beneficiary took therein.

On the death of Anna C. Eisman, the insured, the principal of the policy was "to be paid to John G. Eisman, husband." No one else was mentioned as having any interest therein, and it is not contended that the policy was taken out for the benefit of the children of the beneficiary.

In this State it has been uniformly held that a policy of life insurance is a *chose in action* governed by the same principles applicable to other agreements involving pecuniary obligations; N. Y. Life Ins. Co. vs. Flack, 3 Md. 312; Whitridge vs. Barry, 42 Md. 140; Ritler vs. Smith, 70 Md. 265; and passes like any other *chose in action* upon the death of the owner to the persons who are entitled under the law to take his personal property. And, as was said by the Court in Hewlett vs. Home for Incurables, 74 Md. 354, an insurance policy "was a right to money payable on the happening of a future event which was absolutely sure to occur, although the time of the occurrence was uncertain."

The general rule now seems to be that a policy of insurance and the money to become due under it belong the moment it is issued to the person named in it as the beneficiary, and there is no power in the person procuring the insurance, by any act of his, by deed or will, to transfer to any other person the interest of the person named. The pecuniary value of the insurance policy therefore to the beneficiary when the policy was issued and delivered was the same as if he held and owned a promissory note of the insurance company for a similar amount and payable upon the same conditions. The *chose in action* belonged at that time to John G. Eisman, although it was not capable of being reduced to possession until a future period. It is true that it might be defeated by a forfeiture of the policy, but this circumstance in no way changed its character. It was substantially a *chose in action* and upon its satisfaction by a payment of the amount specified the title to the money so paid followed the title to the policy. The designation by Anna C. Eisman of

her husband as her beneficiary when she took out the insurance, conferred upon him the beneficial interest in the proceeds of the policy. The estate thus acquired by him in the insurance and its proceeds, was "a valuable asset which, at his death, devolved upon his administrator." Thomas vs. Cochran, 39 Md. 405.

It is well settled that the assets of an estate may include property which never came to the hands of the deceased, such as the subsequent increase of his property, that is, money collected under a public treaty, or government claims, after the death of the deceased; Grant vs. Bodwell, 78 Mo. 460; or money recovered on an appeal bond given to the executors of the deceased; Sasscer vs. Walker, 5 G. & J. 102.

If the policy is a *chose in action*, it is personal property which, at the death of the person holding and owning it, would vest in the distributees of such person, subject to administration. That the amount of the policy was not payable until the death of the life insured, can make no difference. Can it be seriously questioned that if John G. Eisman had owned a policy on the life of some other person than his wife, payable to him and he had pre-deceased his wife, that the policy would, on the death of the insured, have gone to the personal representatives of John G. Eisman, and ultimately to his widow, Anna C. Eisman and his children in due course of distribution? Ought it to make any difference that the insurance was on her own life, as in this case?

In Drake vs. Stone, 58 Ala. 138, it was held that under an ordinary life-policy an interest vests in the person for whose benefit it is taken out when the policy is delivered, subject to be divested or forfeited upon non-payment of the premiums, as the policy may prescribe, and that on the death of the beneficiary, either before or after the death of the assured, the fund arising therefrom goes by request or succession as other personal assets of the beneficiary.

There was no express exclusion of Anna C. Eisman, by the terms of the policy, from the right to share in redistribution of the proceeds of the policy, as provided by our Statute of Distribution. It is clear she could not be excluded by implication. Whilst the legal title to the personal estate of

John G. Eisman devolved upon the administrator of his estate, the equitable and beneficial title vested in the surviving widow and children *immediately* on the death of the husband; and the legal title devolved upon such administrator as of the date of the death of the husband for the purpose of collection and distribution amongst the parties entitled. Such has been declared to be the law in this State in the case of Rock Hill College vs. Jones, 47 Md. 1, which decides that the right of a distributee to the property of an intestate vests *co instanti* upon the death of such intestate. The interest of Anna C. Eisman in the policy, like that of the other distributees, vested at the death of her husband, and goes on her death before actual distribution, to her estate.

The following cases have held that where a person owns a policy of insurance on the life of another, and dies intestate, it will be assets of his estate, although the person insured survives him—McCauley's Appeal, 93 Pa. St. 102; Conigland vs. Smith, 79 N. C. 303; Simmons vs. Biggs, 99 N. C. 226— and even the surviving person insured, may take a share in the proceeds of such policy as one of the next of kin or distributees. Mutual Aid Society vs. Miller, 107 Pa. St. 162; Simmons vs. Biggs, supra; Baltz Estate, 4 W. N. C. 447; Hardy's Estate, 4 W. N. C. 463; Anderson's Appeal, 4 Norris 202.

There is no reason why the administration upon John G. Eisman's estate should have been delayed until Anna C. Eisman's death. Conceding his estate to have consisted only of the insurance policy, still it was property subject to administration and distribution as any other kind or species of personal property. If such administration and distribution had taken place prior to Anna C. Eisman's death, she would have stood in the same relation to this policy as to any other personal property owned by her husband; and the right to a one-third interest and estate therein would have passed to her as a distributee. Was there any valid reason why Mrs. Eisman, immediately after the death of her husband, could not have applied for letters of administration on his estate; and as such administrator have sold and assigned the policy, assuming that it then had a sale value, and distributed the fund realized, after deducting charges and debts, as assets of his estate? If such action had been taken is it not clearly manifest how the net balance of the fund would have been distributed? At that time Anna C. Eisman was living and was undoubtedly entitled to her distributive share of her husband's estate by virtue of the Code of Public General Laws, Art. 93, Sec. 121. The mere fact that no administration was had upon her husband's estate until after her death in no way affects the right of the administrator of her estate to collect the distributive share due the estate of his intestate from the administrator of John G. Eisman's estate.

That Anna C. Eisman could not gather the ripened fruit of her contract of insurance is no reason why her estate should be deprived of her right to a distributive share in the proceeds of the policy which had become vested in her during her life time. We are, therefore, of the opinion that the account as stated by the administrator of John G. Eisman's estate, and improvidently passed by this Court, is erroneous and improper in that it failed to allow and distribute to the administrator of Anna C. Eisman one-third of the proceeds of the policy of insurance, after the payment of the proper charges of administration and the debts, if any, of her interest. We will accordingly pass an order setting aside and annulling said administration account and directing that a new and proper account be stated by the administrator of John G. Eisman, in accordance with the views of the Court as herein expressed.