JOHN C. RATSCH *v.* FRANCES T. RENGEL, ET AL.

[No. 74, October Term, 1941.]

*Decided January 13, 1942.*

The cause was argued before SLOAN, JOHNSON, DELA-
PLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Hartwell M. King,* for the appellant.

*Max Sokol,* with whom were *Dickerson, Nice & Sokol*
and *M. William Adelson,* on the brief, for the appellee,
Frances T. Rengel.

*W. Hall Harris, Jr.,* for the Metropolitan Life Insur-
ance Company.

FORSYTHE, J., delivered the opinion of the Court.

The appellant, John C. Ratsch, appeals from a decree of the Circuit Court of Baltimore City, dismissing his bill of complaint against his former wife, Frances T. Ratsch, now Frances T. Rengel, and the Metropolitan Life Insurance Company.

The bill alleges that three life insurance endowment policies were issued to the appellant by the Metropolitan Company, one on October 8, 1924, for $6,000, one one June 7, 1932, for $1,000, and one on May 4, 1936, for $3,400.

In all of the policies the appellant's then wife, now the appellee Frances T. Rengel, was named as beneficiary, in the event the appellant was not living when the policies matured.

Also, there was issued to the appellant by the Metropolitan Company two cumulative endowment policies, one on August 23, 1923, and one on January 30, 1933. The latter two policies did not name the wife as the beneficiary, as alleged in the bill, but were made payable to the executor or administrator of the insured, unless payment was made under the facility of payment clause that "the company may make any payment or grant any non-forfeiture privilege provided herein to the insured, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitable entitled to the same by reason of having incurred expense on behalf of the insured &c."

The right to change the beneficiary in the three endowment policies was reserved to the insured upon the production of the policies at the home office of the insurance company for indorsement of such change thereon.

The bill then alleges that on or about January 15, 1937, differences arose between the appellant and the individual appellee, his then wife, which resulted in a separation, and finally in a divorce on November 25,

1940. The bill also alleges that the policies were in the possession of the said Frances T. Ratsch, now Rengel, and that since the separation she has refused to return them to the appellant, so that his application to the insurance company for a change of the beneficiary could not be effected.

The bill asked that the said Frances T. Rengel be required to return all of the aforesaid policies, and that the Metropolitan Life Insurance Company be authorized and directed to make such change of beneficiary in said policies as may be requested by the appellant.

Testimony was taken before the chancellor, and it discloses that the individual parties were married on April 26, 1923; that they lived together until January 15, 1937, on which date the separation took place; the appellant moving out of the home, and taking with him all of his personal effects. He did not take the insurance policies which, he said, were kept in a strong box. The appellant went to his former home two or three times after the separation, but said nothing about the insurance policies until after the divorce in November, 1940. He then made an application to the insurance company on January 9, 1941, to have a change made as to the beneficiary, and when the company refused to make the change without the production of the policies, demand was made on the appellee to surrender them. She refused, and claimed ownership of them, since she had paid all of the premiums on all of the policies.

The evidence in reference to the payment of premiums is disputed. The appellant admitted his wife actually made all of the payments, but insisted it was with his money. He said it "was taken out of the bank." But his explanation of how any of his money found its way into the bank was very unimpressive. According to the appellant's testimony, he earned, when working, about $30 a week, but for several years was almost entirely out of employment, during all of

which time the premiums were kept up by the appellee. The appellant was the only witness in support of his case, except his niece, who testified she saw the appellant, between the years of 1932 and 1935, give his pay envelope to the appellee. She did not testify she knew how much money, if any, was in the envelope. But the evidence shows that during most of the time of which the niece spoke, the appellant was unemployed. The niece also testified the appellee always went to the bank for money whenever premiums had to be paid. But on cross-examination admitted the appellee paid everything out of the beauty parlor.

On the part of the appellee the evidence shows that she was a very industrious woman, and for a time was earning $45 a week, and later, when conducting the beauty parlor, made a great deal more. The only testimony of the appellee contradicted, is in reference to the strong box in which the appellant said the policies were kept. Appellee said they were not kept in a box, but were always kept by her in a bureau drawer in her bedroom. She is corroborated by a disinterested witness, who said she saw them in the bureau. Also, the appellee is fully corroborated, in reference to the payment of premiums, by the representative of the insurance company, and who also stated the appellant directed him to pay to the appellee the proceeds of a policy which had matured. The appellee's testimony in reference to all of the material facts is direct, plausible and convincing. She was fully corroborated by two entirely disinterested witnesses.

The appellant's testimony, on the most material matters, was evasive and inconsistent. He was not corroborated by a single witness, other than his niece on one point, and her testimony, as above referred to, was without full knowledge of the matter in connection with which she testified. The niece's testimony is entirely without weight.

There is no difficulty about the law in a case like this. Whether the appellee holds the policies by virtue of an equitable assignment, or gift, makes little difference so far as the ownership of the policies in this case is concerned. The rule has long been settled in this State, as elsewhere, that life insurance policies are mere choses in action, and, as such, may be the subject of assignment, or gift. *Rittler v. Smith,* 70 Md. 261, 16 A. 890, 2 *L. R. A.* 844; *Fitzgerald v. Rawlings,* 114 Md. 470, 476, 79 A. 915, Ann. Cas. 1912A, 650; *First National Bank v. Thomas,* 151 Md. 241, 134 A. 210, 47 *A. L. R.* 730.

The law is also well settled that in the absence of statutory requirement, an assignment, or gift of a chose in action is not required to be in writing. It may effectively be done by parole. But when it is by parole, delivery of the policy is essential to a valid assignment, or gift, and when there once is a valid assignment, or gift, by the insured of an insurance policy, the insured no longer has any power to dispose of the policy. But actual delivery is not required, and evidence of delivery may consist of acts, or words, or both. *Smith v. Penn American Plate Glass Co.,* 111 Md. 696, 77 A. 264; *Shorey v. Webb,* 122 Md. 209, 89 A. 391; 4 *Am. Jur.* pp. 284, 290, 299, and note; 16 on p. 290; *Cetkowski v. Knutson,* 163 Minn. 492, 204 N. W. 528, 40 *L. R. A.* 599; *Tongue v. Nutwell,* 31 Md. 302, 317.

The question of whether there has been a valid assignment, or gift, depends, to a great extent, upon the true facts and circumstances of a particular case. In the case now before us the clearly established facts are much stronger to support an equitable assignment, or gift, than were the facts in any of the cases cited. Here the appellee, in addition to being named as the beneficiary in three of the policies, is shown by the evidence to be solely responsible for their existence. The proof is clear that the appellee paid all premiums from the beginning to the present time. She is shown

to have been an industrious woman with a successful business, and financially able to pay the premiums. The appellant, by his own testimony, is shown to have been without a business of any kind, and, during the period when the insurance premiums were falling due, without regular employment, and therefore not financially able to keep up his policies.

The testimony clearly establishes the fact that prior to the divorce, it was the intention of the appellant that the appellee should have the full benefit, as the owner, of the policies. His action in directing the representative of the insurance company to collect from the appellee all premiums, and to pay to her the proceeds due on an accrued policy, refutes his claim, made after sixteen years of acquiescence in the appellee's claim of ownership, that the policies now belong to him, and he should have the right to change the beneficiary.

*Decree affirmed. Appellant to pay the costs.*